## AFFIDAVIT OF SPECIAL AGENT BRENDAN CULLEN
## IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS

I, Brendan Cullen, state:

### *INTRODUCTION AND AGENT BACKGROUND*

1.     I am a Special Agent with the Department of Homeland Security (DHS) United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) assigned to the Boston Field Office.  I have been employed by HSI and its predecessor, the U.S. Customs Service since January of 2003.  I am currently assigned to the Port Investigations Group. Prior to my assignment to the Boston Field Office, I was assigned to the HSI Providence Field Office, where I served as the Resident Agent in Charge, HSI Headquarters in Washington, D.C., where I served as the Program Manager and the Deputy Chief of Staff for ICE, and the HSI Philadelphia Field Office, where I was assigned to several different investigative groups.  In connection with my official duties, I have investigated and assisted other agents in investigating numerous cases involving a wide variety of criminal violations including, but not limited to, fraud, intellectual property rights, and export enforcement investigations.

2.     As a Special Agent, I am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States and thereby authorized to request the issuance of federal search and arrest warrants.

3.     This affidavit is being submitted in support of an application for search warrants under Rule 41 of the Federal Rules of Criminal Procedure for (a) the premises located at 51/53 Plymouth Street in New Bedford, Massachusetts (the "Subject Premises") and (b) the person of Paul MARINO.  The Subject Premises are in a two-family building owned by the wife of

1

MARINO.  There is probable cause to believe that MARINO has violated, and is attempting to

violate, 18 USC § 922(g), Felon in Possession of a Firearm (the "Target Offense"), and that

evidence of the Target Offense will be found at the Subject Premises and/or on MARINO's person.

4.     As described below, there is reason to believe MARINO has used a certain email

account in an effort to purchase a firearm and silencer, and has made admissions via that email

account to previously purchasing a firearm from armslist.com.

5.     The facts in this affidavit come from my personal observations and review of

records, my training and experience, and information obtained from other agents and witnesses.

This affidavit is intended to show merely that there is sufficient probable cause for the requested

warrants and does not set forth all of my knowledge about this matter.

*PROBABLE CAUSE*

**Background Information**

6.     Paul J. MARINO (DOB – xx/xx/1963, SS# - xxx-xx-9869) is a U.S. Citizen who

resides at 51/53 Plymouth Street, New Bedford, Massachusetts.  Marino has a significant criminal

history with arrests dating back to 1979.  Marino's criminal history includes several prior federal

and state convictions, including but not limited to federal felony convictions in the U.S. District

Court for the Eastern District of New York in cases 1:95-cr-571 (sentence of 52 months

imprisonment imposed in 1996) and 1:08-cr-01342 (sentence of 14 months imposed in 2011).  *See*

*also* 1:14-cr-10073-WGY (D. Mass.) (supervised release proceeding resulting in numerous

revocations, including a 2016 revocation judgment with sentence of 12 months in the custody of

the Bureau of Prisons to be followed by 24 months of supervised release).

7.     MARINO is married to Maureen EGAN (*a/k/a* Maureen Marino).[1]

---

[1] *See, e.g.,* MARINO's Sentencing Memorandum, 1:08-cr-01342 (Document 69) ("Paul Marino

8.      According to the New Bedford Assessor's Office (https://www.newbedford-ma.gov/assessors/parcel-lookup/), 51/53 Plymouth Street is a two-family residence owned by EGAN since April 29, 2004.[2]

9.      MARINO has a long affiliation with a construction company known as "CWD Construction."[3]  According to the law enforcement database CLEAR, CWD Construction Company, Inc. based at 88 Wharf St., Milton, MA[4] with an alternate address of 53 Plymouth St., New Bedford, MA.  According to CLEAR, MARINO of 53 Plymouth Street, New Bedford, MA is listed as the Treasurer of this company, while "Michael Andolini" is listed as the President.[5]  CLEAR also lists a telephone number for CWD Construction Company, Inc. as 877- 577-5735.

10.      American Express records for certain accounts in MARINO's name list a user name

---

met Maureen Egan in 1999.  In 2005 they were married…").  *See also* Exhibit B to Sentencing Memorandum (Letter from Maureen Marino regarding her husband Paul and other letters submitted on behalf of MARINO referencing his wife Maureen).

[2] According to Eversource, as of September 17, 2019, gas and electric utilities for 53 Plymouth Street have been in EGAN's name since April of 2004.  According to Eversource, "51 Plymouth Street, Unit 1" was listed as being vacant on September 17, 2019.

[3] *See, e.g.,* MARINO's Sentencing Memorandum, 1:08-cr-01342 (Document 69) ("In 2006, Mr. Marino and his wife started a small construction company, Community Wellness and Development ("CWD") in New York. CWD bid on various construction jobs and hired workers to perform the construction, with Mr. Marino operating as construction supervisor, and involved in the physical labor of all projects. As a result of Mr. Marino's numerous health problems, in 2010 CWD was closed because Mr. Marino could not perform the physical labor required. Since then, Mr. Marino opened a management company that permitted him to provide construction management services").

[4] I understand from visiting 88 Wharf Street that this building is a condo-commercial complex and that there is no apparent sign for CWD Construction or any related business.

[5] According to New Bedford Police reports, "Michael Andolini" is an alias used by MARINO.  On June 26, 2015, EGAN told police that "Michael Andolini" is MARINO.  A scheme to defraud Dell that was investigated by the New Bedford Police involved shipments to 53 Plymouth Street, New Bedford by, *inter alia*, MARINO, EGAN, and "Michael Andolini."

of CWDCINC and an e-mail address of CWDCINC@GMAIL.COM.

11.     As described further below, MARINO is the user of the email address

**cwdcinc@protonmail.com** (the "CWD Account").[6]   While communicating over the CWD

Account, MARINO has stated that he is located in Massachusetts and works in the construction

business, has provided phone number **877-577-5735** (the "CWD Phone Number"), and has

indicated that he has a previous federal conviction.[7]

**The Subject Premises**

12.     I am aware that MARINO has long resided at 51/53 Plymouth Street in New

Bedford.  I understand that 51/53 Plymouth Street is one building, with #51 being the downstairs

unit and that #53 being the upstairs unit.

13.     In addition to the fact that this property is owned by his wife, the following evidence

ties MARINO to 51/53 Plymouth Street, New Bedford, Massachusetts:

> a.  A January 2015 summons to MARINO in case 1:14-cr-10073-WGY lists his
>
>     address as 51 Plymouth Street, New Bedford, MA (Docket 7).
>
> b.  The criminal docket in Commonwealth of Massachusetts case 1557-cr-
>
>     000579 (complaint issued 4/16/2015) lists the Defendant's name and address
>
>     as "Paul J Marino / 51 Plymouth Street / New Bedford, MA 02746."

---

[6] Proton Mail is an end-end encrypted e-mail service based in Switzerland.  The encryption of this foreign-based e-mail service affords users a certain deal of anonymity not available to more widely used U.S.-based e-mail services such as those offered by Google and Yahoo.

[7] MARINO has also identified himself as "Christian."  The name "Christian Bennington" is also associated with 51/53 Plymouth Street in New Bedford, according to records I reviewed from the United States Postal Service and Department of Homeland Security.  American Express records show account information from 2017 for a card opened in the name of Christian Bennington of 51 and 53 Plymouth St., Ste 2, New Bedford, MA.

c.  New Bedford Police reports and files describe search warrants executed on June 26, 2015 at 53 Plymouth Street and 51 Plymouth Street in New Bedford.[8]  Police spoke with EGAN, who indicated that Paul stayed in then first floor apartment (*i.e.*, 51 Plymouth Street) and told police that a television for which they were searching would be in Paul's bedroom downstairs.  Various items that police suspected MARINO had ordered from Dell were found in either 51 or 53 Plymouth Street.  In 53 Plymouth Street, police located a New York benefit identification card issued to MARINO and a phone order receipt in the name of "Michael Andolini" with an address of 53 Plymouth Street, among other items.[9]

d.  According to DHS importation records, MARINO has received numerous shipments to 53 Plymouth Street in either his name, a known alias, his wife's name, or his company's name.  The last importation occurred on August 24, 2019, under the name of CWD Construction Co Inc., to 53 Plymouth Street.

e.  An arrest warrant was issued for MARINO by New Bedford Police Department on July 25, 2019, following an altercation that Marino had with a neighbor on July 23, 2019.   The associated police report lists MARINO's address as 53 Plymouth Street, New Bedford.

f.  American Express records list MARINO's home address of both 51 and 53

---

[8] This investigation related to a scheme to defraud Dell that utilized orders placed to 51 or 53 Plymouth Street in New Bedford.  According to New Bedford Police reports, MARINO had been ordering Dell products, to include laptops and televisions, both in his name and under several aliases, to include "CWD Construction".

[9] Police found a Winchester 12 gauge shotgun and various 12 gauge ammunition in 53 Plymouth Street.  EGAN indicated that she had purchased the shotgun.

Plymouth Street, New Bedford, MA.

      g.  As described below, certain phone numbers associated with MARINO and

CWD Construction list an address of 53 Plymouth Street in New Bedford.

14.     Based on the foregoing facts, and my training and experience, I believe that

MARINO utilizes both units at 51/53 Plymouth Street in New Bedford.

**Marino's Use of the CWD Account**

15.     On July 8, 2019, an HSI Buffalo Special Agent, operating in an undercover

capacity, received an email from the CWD Account.  Next to this e-mail address appeared the word

"Construction."  This e-mail stated the following: "looking to purchase a ruger LC9S. let me know.

Been seeing a few of them around going for 300-350eu but have not been successful yet grabbing

one. Love the piece, please get back to me."  I am aware that a "ruger LC9S" is a .9 mm semi-

automatic pistol made by Sturm, Ruger & Co., Inc.

16.     Subsequent email communications between an HSI Buffalo undercover agent and

the CWD Account revealed that the user of this account had served federal time and knew that he

was prohibited from purchasing a firearm but nonetheless sought to acquire one.[10]

---

[10] Specifically, the user of the CWD Account wrote the following on July 11, 2019, "I work hard
on construction crew for my money, dont come easy, threw a guy down an elevator shaft many
years ago, got a record now and cant go into a fkg store and buy one so I have to come here and get
fucked by these scamming pricks, lost over 4 grand and now a shit ton to actually get one????..."
On July 13, 2019, the user of the CWD Account wrote the following, "I would like to make that
purchase we spoke about. Lets proceed. Whats the delivery time to my door?"  .  Over the course
of the next several weeks, the user of the CWD Account wrote that the firearm was "Going to
Sudbury, MA"  and further stated "I have access to 32 houses in MA, and RI area, if RI works
better lets use that, MA is a bit of a bitch. MA law no good, Rhode Island allows, should be ok.
You can call if  you want if you ant to touch base, we can talk about the "book", stay vague,…"
On August 4, 2019, the CWD Account sent an email stating the following, "…I have done fed time
for bullshit, is what it is. Long time ago. Now marked for life, more bullshit….. I can go to maine
and buy anything I want, no time with the business. I work 7 days a week for my family. Just want
something around the house to protect them if ever the need arises. Not going to be a statistic,,,
man women and child shot to death, women raped first, FUCK THAT. Ill emty a clip before that

17.     The user of the CWD Account provided the following contact information:

"8775775735 [the CWD Phone Number] hit #4 for me, general foreman, Christian."

18.     Based on the information provided in numerous e-mails and subsequent research, I

believe that MARINO is the user of the CWD Account.   I conducted a web search of the e-mail

user name "cwdcinc" and discovered several websites listing the company CWD Construction

Company, Inc.  One website, (www.motorcarriersalliance.org) lists CWD Construction Company,

Inc. as having an address of of 53 Plymouth St, New Bedford, Massachusetts, 02740, and lists the

company representatives as MARINO and "Michael Andolini" (one of MARINO's aliases).  As

noted above, MARINO (with an address of 53 Plymouth Street) is listed as the Treasurer for this

company.

## MARINO and the CWD Phone Number

19.     CLEAR also lists a telephone number for CWD Construction Company, Inc. as 877-

577-5735 (the CWD Phone Number).

20.     Ribbon Communications produced records pertaining to the CWD Phone Number:

Account Information:
Name on Account:          Business Office
Address:                          1250 Pleasantville Road, Briarcliff Manor, NY 10510
Email:                             Constructioncompanyllc@gmail.com

Billing Information:
Amex: ************2068
Paul Marino
53 Plymouth Street, New Bedford, MA 02740
Billing phone: 9178185025

Type of Service
"The customer has a product called u800 which is a call forwarding service.
https://stage.ureach.com/home/onenumberservice.html"

---

happens. World is too crazy for me, mass shootings, I want something to protect my family and the
government says I cant. Fuck them,,,,"

"Account phone number(s): There are 3 numbers linked to the account.  They all forward to the same number.   877-577-5735, 877-882-7332 and 877-779-7122.[11] Calls are forwarded to 917-246-4859"

21.     "J2 Web Services, Inc." has produced the following subscriber information associated with 917-246-4859.

| | |
|---|---|
| Company Name: | Beacon Hill Construction Group Inc |
| Date Added: | 8/6/2017 |
| Company Contact: | paul marino |
| Address: | 53 plymouth st new bedford MA 02740 |
| Business Direct Line: | 8775775735 |

Under the subscriber information for this cellular phone, that there appeared to be options that were added onto the phone number to dial by number.  These options contained several points of contact, including the following:

| | |
|---|---|
| General Foreman | general.foreman.1383234@onebox.com |
| New Clients | christian.bennington.1383234@onebox.com |

22.     "Beacon Hill Construction Group Inc" is an entity known to be used by MARINO.[12]

23.     Based on the foregoing, I believe that the CWD Account is tied to MARINO and his New Bedford residence via both the CWD Phone Number (877-577-5735) and via the alternate number to which calls to the CWD Phone Number are forwarded (917-246-4859).

---

[11] 877-779-7122 is a phone number that was previously listed as being associated with MARINO and his alias, "Michael Andolini," in 2015 New Bedford Police reports.  A 2019 New Bedford police report provides multiple phone numbers for MARINO.

[12] In a 2017 Request for Modification of the conditions of MARINO's supervised release, U.S. Probation noted that Beacon Hill Construction was "one of Marino's former companies" and alleged that MARINO had used an alias ("Mitchell Mancini") to do business on behalf of Beacon Hill Construction.  *See* 1:14-cr-10073-WGY (Docket 85).  During a home visit in September 2017, MARINO admitted that he had used aliases and "did not deny the use" of the alias Mitchell Mancini.  *Id.*

**MARINO's Admissions to Gun Possession via the CWD Account**

24.     On August 27, 2019, the user of the CWD Account wrote the following: "Ill give it a shot, its not rocket science, actually went to armslist and bought something super easy, owner of a gunstore out west, shipped it in 2 packages with the slide off and marked PARTS, right thru post office, no bullshit at all, here in 3 days. 100 dollars over list price, not like some of theses scumbags charging 3 and 4 times list."  Based on this e-mail, and my training and experience, I believe that MARINO (the user of the CWD Account) indicated that he had purchased a firearm through a dealer operating via the firearms classifieds' website www.armslist.com.  Specifically, I believe that MARINO indicated that he purchased from a dealer located in the west, who shipped the firearm in two different shipments with the slide portion of the gun removed from the body of the firearm.

25.     US Postal Service ("USPS") records revealed that several mail parcels from addresses in California were delivered to both 51 and 53 Plymouth Street in New Bedford, Massachusetts in July and August of 2019.  These mail parcels were addressed to "CHRISTIAN BENNINGTON" at 51 Plymouth Street, "Construction Company" at 53 Plymouth Street, and four mail parcels addressed to "Child Marino" at 53 Plymouth Street.  Based on this information, and the admissions made via the CWD Account, I believe that MARINO likely obtained a firearm via USPS packages sent to 51 and/or 53 Plymouth Street in New Bedford.

26.     On August 29, 2019, I received an e-mail from the CWD Account.  The title of this e-mail was "Construction."  The email stated "I want a silenced glock what would you charge me delivered?"  On August 30, 2019, I received an e-mail from the CWD Account that stated "Looking for high quality super quiet."  I believe, based on my training and experience, that MARINO was seeking to acquire a firearm with a silencer or suppressor.

27.     On September 1, 2019, I received an e-mail from the CWD Account that stated "whisper quiet. Hard to find. My neighbor gets pissed when I want to have some fun in the backyard. I like to shoot,,,,, If you have better,,, great"  Marino also sent two URL links to silencers available for sale via the website www.silencershop.com; the Dead Air Wolf-9SD model and the SilencerCo Omega 9K model.

28.     On September 15, 2019, I sent photographs of a Glock 19 9 MM pistol and a "9Osprey 9MM" silencer to the CWD Account.  On September 16, 2019, I received several emails from the CWD Account, including one reading "Been super busy at work,, trying to save up some cash for my toys.!!!"  A subsequent email from the CWD Account asked "total cost to my door???? 9mm i assume?" Another email from the CWD Account attached an article discussing an additional piece needed for an Osprey to work on certain other weapons.  The user of the CWD Account (MARINO) wrote the following in regards to this article, "Noticed this article,,, need for additional piece,,,,,"  Based on communications I have had with the Bureau of Alcohol, Firearms, Tobacco, and Explosives ("ATF"), I understand that the user of the CWD Account was referencing a fixed barrel spacer.  According to ATF, a fixed barrel spacer is used when attaching a silencer to a fixed barrel firearm.  The Glock 19 is not a fixed barrel firearm and does not require a fixed barrel spacer to operate with a silencer.  Thus, based on the context of these emails, I believe that the user of the CWD Account (MARINO) seeks a fixed barrel spacer for use with a firearm in addition to the Glock firearm that he is seeking to acquire.

29.     Subsequently, I have engaged in communications with the CWD Account concerning a proposed firearm sale and a potential in-person meeting.[13]

_____

[13] I emailed the CWD Account concerning the cost for a 9 MM with suppressor.  On September 17, 2019, I received a response an e-mail stating "lets do this."  The user of the CWD Account provided an address located in Marion, MA and later wrote "or if Rhode Island is better let me

30.     On September 24, 2019, I received an e-mail from MARINO using the CWD

Account stating, "I managed to pick up the 9, still need the ospray".  Based on this e-mail from

MARINO using the CWD Account, and on my training and experience, I believe that MARINO

was informing me that, since our previous e-mail communications, he had acquired a 9 MM

firearm and was now seeking to only purchase the Osprey silencer.

31.     Based on my training and experience, and the email communications from the CWD

Account, I believe that MARINO likely possesses at least one firearm and that continues to seek a

silencer/suppressor to use in connection with one or more firearm that he presently possesses.

32.     I know, based on my training and experience, that individuals who own a firearm

frequently keep such firearm at home, both for personal/family safety and to maintain such firearm

securely.  In addition, I know from the compilation and review of various records that MARINO

has used 51/53 Plymouth Street in connection with various business and/or criminal endeavors.

Moreover, based on his references to his "neighbor" and "the backyard," I believe that it is likely

that MARINO keeps his firearm at the residence owned by his wife.

33.     I also know, based on my training and experience, that individuals who own a

firearm – and especially a handgun – sometimes keep that firearm on their person, including for

self-defense.

34.     Based on the foregoing, I also believe that MARINO has employed email

communications and the internet in an effort to obtain a firearm and has provided a phone number

for the purpose of furthering his effort to obtain a firearm.  I believe that MARINO has used one or

more electronic devices to engage in communications concerning his possession of a firearm,

including to send and receive emails concerning his proposed purchase of a firearm and suppressor,

---

know. I have a place there as well."

11

to send emails in which he admitting to possessing a handgun, and to order a firearm from a seller utilizing www.armslist.com.

### SEIZURE OF COMPUTER EQUIPMENT AND DATA

35.     From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use computers to create and store records of their actions by communicating about them through e-mail, instant messages, and updates to online social-networking websites; drafting letters; keeping their calendars; arranging for travel; storing pictures; researching topics of interest; buying and selling items online; and accessing their bank, financial, investment, utility, and other accounts online.

36.     I know, based on my training experience, that individuals often keep cell phones and other mobile devices in their residence, especially when they are home.  I also know that individuals often keep computers, tablets, and other devices used to send or received emails in their residences.

37.     I also know, based on my training experience, that individuals often keep cell phones and other mobile devices on their persons, especially when they are outside the home.

38.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's definition of "hardware") can now function essentially as small computers.  Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data.  Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

39.     Based on my knowledge, training, experience, and information provided to me by other agents, I know that computer files or remnants of such files can be recovered months or years after they have been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

a.      Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost.  Furthermore, when users replace their computers, they can easily transfer the data from their old computer to their new computer.

b.      Even after files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how the computer has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  It is technically possible to delete this information, but computer users typically do not erase or delete this evidence because special software is typically required for that task.

d.      Similarly, files that have been viewed over the Internet are sometimes

13

automatically downloaded into a temporary Internet directory or "cache."  The

browser often maintains a fixed amount of hard drive space devoted to these files,

and the files are overwritten only as they are replaced with more recently viewed

Internet pages or if a user takes steps to delete them.

40.     Based on my knowledge and training and the experience of other agents with whom

I have spoken, I am aware that in order to completely and accurately retrieve data maintained in

computer hardware, computer software or storage media, to ensure the accuracy and completeness

of such data, and to prevent the loss of the data either from accidental or programmed destruction,

it is often necessary that computer hardware, computer software, and storage media (computer

equipment) be seized and subsequently processed by a computer specialist in a laboratory setting

rather than in the location where it is seized.  This is true because of:

    a.      The volume of evidence — storage media such as hard disks, flash drives,

    CDs, and DVDs can store the equivalent of thousands or, in some instances,

    millions of pages of information.  Additionally, a user may seek to conceal evidence

    by storing it in random order or with deceptive file names.  Searching authorities

    may need to examine all the stored data to determine which particular files are

    evidence, fruits, or instrumentalities of criminal activity.  This process can take

    weeks or months, depending on the volume of data stored, and it would be

    impractical to attempt this analysis on-site.

    b.      Technical requirements — analyzing computer hardware, computer software

    or storage media for criminal evidence is a highly technical process requiring

    expertise and a properly controlled environment.  The vast array of computer

    hardware and software available requires even computer experts to specialize in

14

some systems and applications.  Thus, it is difficult to know, before the search,

which expert possesses sufficient specialized skill to best analyze the system and its

data.  Furthermore, data analysis protocols are exacting procedures, designed to

protect the integrity of the evidence and to recover even "hidden," deleted,

compressed, or encrypted files.  Many commercial computer software programs also

save data in unique formats that are not conducive to standard data searches.

Additionally, computer evidence is extremely vulnerable to tampering or

destruction, both from external sources and destructive code imbedded in the system

as a "booby trap."

Consequently, law enforcement agents may either copy the data at the premises to be searched or seize the

computer equipment for subsequent processing elsewhere.

41.    The premises may contain computer equipment whose use in the crime(s) or storage

of the things described in this warrant is impractical to determine at the scene.  Computer

equipment and data can be disguised, mislabeled, or used without the owner's knowledge.  In

addition, technical, time, safety, or other constraints can prevent definitive determination of their

ownership at the premises during the execution of this warrant.  If the things described in

Attachment B are of the type that might be found on any of the computer equipment, this

application seeks permission to search and seize it onsite or off-site in order to determine their true

use or contents, regardless of how the contents or ownership appear or are described by people at

the scene of the search.

### *CONCLUSION*

42.     Based on the foregoing, I believe that there is probable cause to search the Subject

Premises and the person of Paul MARINO for evidence of the Target Offense.

Sworn to under the pains and penalties of perjury.

Brendan Cullen
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on September 25, 2019

HON. JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

### RESIDENCE TO BE SEARCHED
51/53 Plymouth Street, New Bedford, Massachusetts 02740 (the "Subject Premises")

The Subject Premises is located at 51/53 Plymouth Street, New Bedford, Massachusetts 02740 and is depicted below.  It is located on the north-side of Plymouth Street on the first and second level of a two-story building with two separate front entrances, both visible from the street.  The exterior of the Subject Premises has an off-white vinyl siding.  The Subject Premises also appears to have a detached garage located to the right-hand side of the residence.  According to publicly available records from the New Bedford Assessor's Office, 51/53 Plymouth Street is a two-family residence owned by Maureen Egan.



**ATTACHMENT B**
**ITEMS TO BE SEIZED**

I.   All records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g), (Felon in Possession of a Firearm); for the time period of January 1, 2019 to present, including those related to:

A.   All firearms, firearms parts and accessories, suppressors/silencers, ammunition and related components;

B.   All packaging material used to ship firearms or firearms parts, to include labels listing shippers and consignees;

C.   All records related to the actual, contemplated, or attempted possession, purchase, acquisition, transfer, storage, shipment, importation, or sale of any firearm, ammunition, silencer, or firearm component.

D.   All records showing any payments or monetary transfers relating to the actual, contemplated, or attempted possession, purchase, acquisition, transfer, storage, shipment, importation, or sale of any firearm, ammunition, silencer, or firearm component, and records evidencing the use or ownership of any account utilized for such payment or transfer.

E.   All records evidencing the use or ownership of any electronic device(s), email account(s), or phone account(s) utilized in connection with the actual, contemplated, or attempted possession, purchase, acquisition, transfer, storage, shipment, importation, or sale of any firearm, ammunition, silencer, or firearm component.

18

F.   For any computer hardware, computer software, mobile phones, or storage media called for by this warrant or that might contain things otherwise called for by this warrant (the computer equipment):

      i.   evidence of who used, owned, or controlled the computer equipment;

      ii.   evidence of the presence or absence of malicious software that would allow others to control the items, and evidence of the presence or absence of security software designed to detect malicious software;

      iii.   evidence of the attachment of other computer hardware or storage media;

      iv.   evidence of counter-forensic programs and associated data that are designed to eliminate data;

      v.   evidence of when the computer equipment was used;

      vi.   passwords, encryption keys, and other access devices that may be necessary to access the computer equipment; and

      vii.   records and tangible objects pertaining to accounts held with companies providing Internet access or remote storage.

G.   Records and tangible objects relating to the ownership, occupancy, or use of the premises to be searched (such as utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation, receipts and check registers).

H.   All computer hardware, computer software, and storage media believed to be belonging to or used by MARINO.  Off-site searching of these items shall be limited to searching for the items described in paragraph I.

***DEFINITIONS***

For the purpose of this warrant:

    a.   "Computer equipment" means any computer hardware, computer software, mobile phone, storage media, and data.

    b.   "Computer hardware" means any electronic device capable of data processing (such as a computer, smartphone, mobile phone, or wireless communication device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys).

    c.   "Computer software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.

    d.   "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, or memory card).

    e.   "Data" means all information stored on storage media of any form in any storage format and for any purpose.

    f.   "A record" is any communication, representation, information or data.  A "record" may be comprised of letters, numbers, pictures, sounds or symbols.

### *RETURN OF SEIZED COMPUTER EQUIPMENT*

If the owner of the seized computer equipment requests that it be returned, the government will attempt to do so, under the terms set forth below.  If, after inspecting the seized computer equipment, the government determines that some or all of this equipment does not contain contraband or the passwords, account information, or personally-identifying information of victims, and the original is no longer necessary to retrieve and preserve as evidence, fruits or instrumentalities of a crime, the equipment will be returned within a reasonable time, if the party seeking return will stipulate to a forensic copy's authenticity (but not necessarily relevancy or admissibility) for evidentiary purposes.

If computer equipment cannot be returned, agents will make available to the computer system's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, or personally-identifying information of victims; or the fruits or instrumentalities of crime.

For purposes of authentication at trial, the Government is authorized to retain a digital copy of all computer equipment seized pursuant to this warrant for as long as is necessary for authentication purposes